[No. B219485. Second Dist., Div. Three. Aug. 10, 2011.]

CITY OF INDUSTRY et al., Plaintiffs and Appellants, v.
CITY OF FILLMORE et al., Defendants and Respondents.

COUNSEL

Michele R. Vadon, City Attorney; Burke, Williams & Sorensen, Mark J. Mulkerin and Amy E. Hoyt for Plaintiff and Appellant City of Industry.

John Pomidor, City Attorney; Burke, Williams & Sorensen, Benjamin L. Stock and J. Leah Castella for Plaintiff and Appellant City of Livermore.

Theodore J. Schneider, City Attorney, for Defendant and Respondent City of Fillmore.

Dewey & LeBoeuf, Dean Hansell and Ian C. Eisner for Defendant and Respondent Inspired Development, LLC.

Gibson, Dunn & Crutcher, Joel A. Feuer and Jessica L. Lund for Defendant and Respondent MTS Consulting, LLC.

Munger, Tolles & Olson, Richard E. Drooyan and Lynn H. Scaduto for Defendant and Respondent Owens & Minor, Inc.

OPINION

**CROSKEY, Acting P. J.**—The City of Industry (Industry) and the City of Livermore (Livermore) sued the City of Fillmore (Fillmore), Inspired Development, LLC (Inspired Development), MTS Consulting, LLC (MTS), and Owens & Minor, Inc. (Owens & Minor), alleging several counts arising from the alleged diversion of local sales tax revenues to Fillmore and away from Industry and Livermore. The trial court sustained demurrers to the complaint without leave to amend, granted a special motion to strike several counts, and dismissed the complaint.

Industry and Livermore contend the demurrers to several counts cannot be sustained based on their purported failure to comply with Fillmore's claims presentation requirement, failure to exhaust administrative remedies, or lack of standing. We agree. They also contend they adequately allege counts for fraud and conspiracy. With respect to those counts, we conclude that together they constitute a single count for fraud against all defendants as coconspirators and that the sustaining of the demurrers to those counts was error.

Industry and Livermore also contend their fraud and conspiracy counts do not arise from protected activity under the anti-SLAPP statute (Code Civ.

Proc., § 425.16).[1] We hold that the routine submission of sales tax returns to the state's Board of Equalization (SBE) was not an act in furtherance of defendants' constitutional right of petition or free speech in connection with a public issue within the meaning of the anti-SLAPP statute and that the striking of the fraud and conspiracy counts was therefore error. We will, however, affirm the trial court's order granting defendants' special motion to strike with respect to several of the causes of action alleged by Industry and Livermore. As a result, we will reverse the trial court's order awarding attorney fees to defendants and remand the matter with directions to conduct further proceedings with respect to that issue.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background

Fillmore entered into written agreements with MTS and Inspired Development in 2003 providing economic incentives for MTS and Inspired Development to cause retailers to establish sales offices in Fillmore. Fillmore agreed to pay MTS and Inspired Development 85 percent of the local sales tax revenues received by Fillmore attributable to such retailers.[2]

Industry and Livermore jointly presented two claims to Fillmore in August 2008, alleging that Fillmore had participated in a scheme to illegally divert local sales tax revenues away from Industry and Livermore. Fillmore responded with a notice of return of claim without action, stating that the claims were not presented within six months after the occurrence, that Fillmore therefore would take no action on the claims, and that the only recourse available to Industry and Livermore was to apply for leave to present a late claim.

### 2. Administrative Proceedings

Industry and Livermore filed petitions with the SBE to reallocate local sales tax revenues. They argued that Fillmore and certain retailers had devised a means to divert sales tax revenues away from the cities where the taxable business activities actually occurred by setting up sham offices in Fillmore and falsely claiming that the taxable business activities occurred in Fillmore. The SBE's allocation group issued a decision in August 2008 stating that sales by a particular taxpayer did not occur in Fillmore and that the sales tax revenues allocated to Fillmore for the fourth quarter of 2007

---

[1] All statutory references are to the Code of Civil Procedure unless stated otherwise.

[2] Government Code section 53084.5 was enacted in June 2009 as an urgency measure, prohibiting such agreements in certain circumstances. The statute applies only to agreements entered into after the date of its enactment. (*Id.*, subd. (a).)

would be reallocated. Fillmore objected to the decision. The allocation group issued a supplemental decision in February 2009 explaining the basis for its decision and granting the petitions for reallocation.

Fillmore objected to the supplemental decision and requested an appeals conference. The allocation group referred the matter to the SBE's appeals division, noting the existence of a dispute as to the timeliness of the appeal. The appeals division conducted a hearing on the reallocation dispute in August 2009. It issued its decision and recommendation on November 29, 2010, finding among other things that Fillmore's objection to the supplemental decision was untimely and that the supplemental decision therefore became final on April 15, 2009, as to tax reallocations for the period from October 1, 2007, to December 31, 2008.[3] The appeals division also concluded that Fillmore's untimely objection to the supplemental decision constituted a new petition for reallocation for the period beginning January 1, 2009. The appeals division granted Fillmore's new petition in part, denied it in part, and ordered an audit to determine the proper amounts to be reallocated for the period beginning January 1, 2009. Several parties have appealed the decision by the appeals division to the SBE's board members, and those appeals are currently pending.

### 3. *Complaint by Industry and Livermore*

Industry and Livermore filed a complaint against Fillmore, MTS, Inspired Development, and Owens & Minor in April 2009. They allege in the complaint that Fillmore entered into contracts with MTS and Inspired Development for the purpose of diverting sales tax revenues away from the cities where the taxable business activities actually take place. They allege that MTS and Inspired Development solicited retailers, including Owens & Minor, to set up sham offices in Fillmore and then falsely report those office locations as the point of sale in exchange for a share of the sales tax revenues. They allege that Owens & Minor and other retailers have established sham offices in Fillmore and falsely reported to the SBE that those office locations were the point of sale, and that Fillmore has received allocations of sales tax revenues based on those false representations.

---

[3] Industry and Livermore filed a petition for writ of mandate seeking to compel the SBE to implement its supplemental decision. The trial court concluded that Industry and Livermore must await the completion of the administrative review proceedings and dismissed their petition with prejudice. On appeal, we held that Industry and Livermore need not await the completion of the administrative review proceedings before seeking judicial relief. We held further that Fillmore's appeal from the supplemental decision was untimely, that the supplemental decision was final, and that the SBE had no jurisdiction to review it. (*City of Fillmore v. Board of Equalization* (2011) 194 Cal.App.4th 716, 732–734 [125 Cal.Rptr.3d 186].) We therefore reversed the judgment with directions to the trial court to issue a writ of mandate compelling the SBE to implement the supplemental decision. (*Id.* at p. 735.)

Industry and Livermore allege counts for (1) gift of public funds in violation of article XVI, section 6 of the California Constitution, against Fillmore; (2) exceeding the debt limit established by article XVI, section 18 of the California Constitution, against Fillmore; (3) disbursing sales tax revenues in excess of the limit established by article XIII B, section 1 of the California Constitution, against Fillmore; (4) contracting away police power, against Fillmore; (5) "fraud/indirect deception" (capitalization omitted), against all defendants; (6) racketeering in violation of title 18 United States Code section 1962, against all defendants; (7) unjust enrichment, against all defendants; (8) conversion, against all defendants; (9) unfair business practices (Bus. & Prof. Code, § 17200 et seq.), against all defendants; (10) conspiracy to defraud and to convert tax revenues, against all defendants; (11) denial of equal protection and due process in violation of title 42 United States Code section 1983, against Fillmore; and (12) declaratory relief, against all defendants.

### 4. *Special Motion to Strike and Demurrers*

MTS filed a special motion to strike the fifth through 10th counts in June 2009. MTS argued that those counts arose from statements made to the SBE in connection with administrative proceedings to determine the proper allocation of local sales tax revenues. MTS also argued that the allocation of local sales tax revenues was a matter of public interest. The notice of motion stated that each of the other defendants joined in the special motion to strike. The other defendants also filed separate notices stating that they joined in the special motion to strike by MTS.

Fillmore demurred to the complaint, arguing that (1) Industry and Livermore failed to present timely claims to Fillmore and failed to apply for leave to present late claims, so the first through third, fifth, and seventh through 10th counts were barred; (2) Industry and Livermore had petitioned the SBE for reallocation of the local sales tax revenues, and Fillmore's appeal of the supplemental decision by the allocation group was then pending before the appeals division, so there was no final administrative decision and Industry and Livermore failed to exhaust their administrative remedies on all counts; and (3) Industry and Livermore had no standing to sue Fillmore as taxpayers, so the first through fifth, 11th, and 12th counts were barred. Owens & Minor and Inspired Development joined in the demurrer by Fillmore as to counts five through ten and twelve of the complaint. MTS joined in the demurrer by Fillmore as to the 12th count.

Owens & Minor also demurred to the complaint, arguing that (1) Industry and Livermore had no private right of action arising from the alleged misrepresentations, and their sole remedy was to petition the SBE for

reallocation; (2) they failed to allege either a misrepresentation made to them or their reliance on a misrepresentation for purposes of their fifth count for fraud and 10th count for conspiracy; and (3) Owens & Minor was not a party to the alleged unlawful contracts and therefore was not a proper defendant to the 12th count for declaratory relief. Fillmore, Inspired Development, and MTS joined in the demurrer by Owens & Minor. Inspired Development and MTS also filed separate demurrers to the complaint, incorporating by reference the arguments made by Fillmore and Owens & Minor.

The trial court heard argument on the special motion to strike and demurrers in July 2009, and took the matters under submission. The court filed an order on August 7, 2009, ruling on these matters.

The trial court concluded that Industry and Livermore failed to timely present claims to Fillmore as required by the Fillmore Municipal Code and failed to apply for leave to present late claims, so their first through third, fifth, and seventh through 10th counts against Fillmore were barred. The court also concluded that Industry and Livermore had no standing to sue Fillmore as taxpayers and therefore could not maintain the first through fifth, 11th, and 12th counts against Fillmore.[4] With respect to the exhaustion of administrative remedies, the court stated that the court was not persuaded that the exhaustion requirement applied to the first, fourth, and 12th counts, but that the requirement "may apply to the remaining causes of action (Fifth through Tenth), as those causes of action regard the distribution of the tax."

The trial court concluded further that the SBE was not the agent of Industry and Livermore, that they failed to allege that the SBE relayed any misrepresentation to them or that they relied on any such misrepresentation, and that they failed to adequately allege fraud or an actionable conspiracy. The court concluded that Industry and Livermore failed to adequately allege the sixth through ninth and 12th counts for other reasons. The court therefore sustained the demurrers to all counts against all defendants without leave to amend.

The trial court also concluded that the fifth through 10th counts were based on statements made to the SBE and arose from protected activity under the anti-SLAPP statute, and that Industry and Livermore failed to establish a probability of prevailing on those claims. The court therefore granted the special motion to strike the fifth through 10th counts. Having adjudicated all counts against MTS and Inspired Development in favor of those defendants,

---

[4] The order is somewhat ambiguous as to which counts the trial court concluded that Industry and Livermore had no standing to bring. We construe the reference in the order to "the First, Five, Eleventh and Twelfth" counts to mean the first five, 11th, and 12th counts, which are the same counts that Fillmore challenged in its demurrer on this point.

the court dismissed the complaint against those defendants.[5] The court later dismissed the complaint against Fillmore and Owens & Minor in an order filed on September 28, 2009.

Industry and Livermore timely appealed the orders of dismissal and the order granting the special motion to strike as to each defendant.[6]

### 5. *Attorney Fee Awards*

Each defendant moved for an award of attorney fees and costs as the prevailing defendant on an anti-SLAPP motion (§ 425.16, subd. (c)). Industry and Livermore filed opposition. The trial court granted the motions, awarding fees and costs to each defendant. Industry and Livermore timely appealed the order awarding such attorney fees and costs.

## CONTENTIONS

Industry and Livermore challenge the sustaining of the demurrers filed by Fillmore and Owens & Minor, the granting of defendants' special motion to strike, and the award of attorney fees and costs to each defendant.[7] They contend (1) their complaint adequately alleges compliance with the claims presentation requirement; (2) the exhaustion of administrative remedies requirement is inapplicable; (3) they have standing to sue Fillmore as interested parties and need not establish standing as taxpayers; (4) their complaint adequately alleges counts for fraud and conspiracy against all defendants; (5) their fraud and conspiracy counts do not arise from protected activity under the anti-SLAPP statute; (6) they have established a probability of prevailing on their claims for purposes of the anti-SLAPP statute; and (7) the attorney fees awarded to defendants are excessive.

---

[5] Industry and Livermore moved for reconsideration of the order sustaining the demurrer to their complaint and presented a proposed amended complaint alleging only five counts. The trial court denied the motion on September 25, 2008.

[6] A signed order of dismissal is an appealable judgment. (§§ 581d, 904.1, subd. (a)(1).) An order granting or denying a special motion to strike is also appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

[7] Industry and Livermore expressly abandon their appeal as to the dismissal of their sixth count for racketeering, seventh count for unjust enrichment, eighth count for conversion, ninth count for unfair business practices, and 11th count for violation of title 42 United States Code section 1983. They fail to address the sustaining of the demurrer by Owens & Minor to their 12th count for declaratory relief and therefore abandon their appeal as to the dismissal of that count against Owens & Minor as well.

## DISCUSSION

### 1. *The Sustaining of the Demurrers to Several Counts Was Error*

#### a. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189]; *Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1152 [2 Cal.Rptr.3d 396].) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*)

We must affirm the judgment if the sustaining of the demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) For purposes of this rule, we consider the grounds stated in the demurrer to be the particular grounds specified in the demurrer and argued in the memorandum of points and authorities supporting the demurrer, rather than the broader statutory grounds listed in section 430.10. Accordingly, we need not decide whether the complaint fails to allege facts sufficient to state a cause of action for reasons that were not raised in the demurrer. (See *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173 [132 Cal.Rptr.2d 490, 65 P.3d 1255]; *id.* at p. 185 (conc. opn. of Kennard, J.).) We may exercise our discretion to consider legal questions for the first time on appeal, provided that the parties are afforded a reasonable opportunity to address those questions (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24 [44 Cal.Rptr.2d 370, 900 P.2d 619]), but we are not obligated to do so.

#### b. *Industry and Livermore Adequately Allege Timely Claims Presentation*

The Government Claims Act provides that a person must present a timely claim for money or damages to a local public entity before suing the local public entity for money or damages. (Gov. Code, §§ 905, 945.4.) Certain claims are excepted from the claims presentation requirement, however, including claims by another local public entity, such as the claims by Industry and Livermore at issue here. (*Id.*, § 905, subd. (i).) Claims against a

local public entity for money or damages that are excepted from the claims presentation requirement by Government Code section 905 and "are not governed by any other statutes or regulations expressly relating thereto" are governed by the procedure prescribed in any charter, ordinance, or regulation adopted by the local public entity.[8] (Gov. Code, § 935, subd. (a).)

■ Fillmore Municipal Code section 2.56.030 states that no action may be brought on any claim for money or damages against Fillmore unless a claim has been presented and rejected. That section states further that any claim for damages against Fillmore must be presented within 90 days after the occurrence that gave rise to the damages, and that "all other claims or demands shall be presented within ninety days after the last item of the account or claim occurred."

■ Government Code section 935, subdivision (c) states that a local claims procedure may not require a shorter time for presentation of a claim than the time provided in Government Code section 911.2. Government Code section 911.2, subdivision (a) states that "[a] claim relating to a cause of action for death or for injury to person or to personal property or growing crops" must be presented within six months after the accrual of the cause of action, and that all other claims must be presented within one year after the accrual. The provisions of Government Code section 911.2, subdivision (a) supersede the 90-day limit under Fillmore Municipal Code section 2.56.030 and govern the claims here. (Gov. Code, § 935, subd. (c); see 1 Coates et al., Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2011) § 5.25, pp. 186–187.)

■ Government Code section 935, subdivision (b) states that if a local procedure requires that a claim be presented and acted on before filing suit, as here, any action on the claim is governed by Government Code sections 945.6 and 946. Government Code section 945.6 provides that if the local public entity provided written notice pursuant to Government Code section 913 of its action on the claim, any suit on the claim must be filed within six months after the date that the notice was personally delivered or deposited in the mail. (*Id.*, § 945.6, subd. (a)(1).) If the local public entity failed to provide written notice pursuant to Government Code section 913, any suit on the claim must be filed within two years after the accrual of the cause of action. (*Id.*, § 945.6, subd. (a)(2).)

Industry and Livermore allege in their complaint that they presented claims to Fillmore in August 2008. They asserted in their claims, attached to their

---

[8] The parties apparently agree that no other state statute or regulation expressly governs the claims at issue here.

complaint, that they learned of the alleged illicit scheme in April 2008, less than five months earlier.[9] Fillmore notified Industry and Livermore in October 2008 that the claims were being returned without action because the claims had not been presented within the six-month period established by Government Code section 911.2.[10] The notice, attached to the complaint, also stated, "Your only recourse at this time is to apply without delay to the City of Fillmore, California for leave to present a late claim."[11] (See Gov. Code, § 911.3.)

■ A demurrer can be sustained based on the statute of limitations or other limitations period only if the facts alleged in the complaint, or matters of which judicial notice is taken, disclose " 'clearly and affirmatively' " that the cause of action is barred. (*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 324 [102 Cal.Rptr.2d 13].) Fillmore's determination that the claims were untimely does not establish as a matter of incontrovertible fact that the claims were untimely. Instead, Industry and Livermore may challenge that determination in this action.[12] (*Mandjik v. Eden Township Hospital Dist.* (1992) 4 Cal.App.4th 1488, 1500 [6 Cal.Rptr.2d 582]; *Rason, supra,* 201 Cal.App.3d at p. 827.) The factual questions regarding the accrual of the causes of action cannot be decided on demurrer.

The trial court sustained Fillmore's demurrer to counts one, two, three, five, and 10 against Fillmore based in part on the failure to present a timely

---

[9] Fillmore did not argue and has not shown that the causes of action accrued at an earlier time as a matter of law.

[10] The parties do not discuss and we need not decide whether, under Government Code section 911.2, the claims were required to be presented to Fillmore within six months after the accrual of the cause of action or within one year after the accrual.

[11] Government Code section 911.3, subdivision (a) states that the governing board of a local public entity may give written notice that a claim was not timely presented within six months after the accrual of the cause of action as required under Government Code section 911.2, if applicable, and sets forth language the substance of which must be included in the notice, including, " '[y]our only recourse at this time is to apply without delay to (name of public entity) for leave to present a late claim.' " The statutorily required language is inaccurate because an application for leave to present a late claim (see *id.,* §§ 911.4, 946.6) is not the "only recourse." Instead, the claimant may challenge the decision that the claim was untimely by filing a complaint on the claim and alleging in the complaint that the claim was timely, as Industry and Livermore did here. (See *Rason v. Santa Barbara City Housing Authority* (1988) 201 Cal.App.3d 817, 828 [247 Cal.Rptr. 492] (*Rason*); *Ngo v. County of Los Angeles* (1989) 207 Cal.App.3d 946, 952 [255 Cal.Rptr. 140].)

[12] *County of Los Angeles v. Superior Court* (2005) 127 Cal.App.4th 1263 [26 Cal.Rptr.3d 445], cited by Fillmore and the trial court for the proposition that Industry and Livermore were required to apply for leave to present a late claim, neither held nor suggested that a claimant who challenges a public entity's decision that a claim was untimely must apply for leave to present a late claim. Instead, that opinion stated that if the claim in fact was untimely (a fact that is neither conceded nor established here), the claimant was required to apply for leave to present a late claim. (*Id.* at p. 1272.)

claim. We conclude that this was error and that the sustaining of the demurrer to these counts cannot be affirmed on this basis.

### c. *Industry and Livermore Allege a Proper Basis for Standing*

■ Only a real party in interest has standing to prosecute an action, except as otherwise provided by statute. Section 367 states, "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."

■ "A real party in interest ordinarily is defined as the person possessing the right sued upon by reason of the substantive law. [Citation.]" (*Killian v. Millard* (1991) 228 Cal.App.3d 1601, 1605 [279 Cal.Rptr. 877].) A real party in interest must have an actual, substantial interest in the subject matter of the action. (*County of Alameda v. State Bd. of Control* (1993) 14 Cal.App.4th 1096, 1103 [18 Cal.Rptr.2d 487].) A person who has no interest in the subject matter of an action, and therefore no right to relief, has no standing and cannot state a cause of action, so a general demurrer will be sustained. (*Parker v. Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6].)

Industry and Livermore contend they have standing to bring their first through fifth and 12th counts because they have an interest in the outcome of this litigation. They argue that they have an interest in the outcome of this litigation because they are harmed by the diversion of local sales tax revenues resulting from the performance of Fillmore's agreements with MTS and Inspired Development, and they seek to invalidate those agreements and recover damages. They argue further that because they have an interest in the outcome of this litigation they need not allege standing as taxpayers under section 526a.

Industry and Livermore allege in their first count for gift of public funds that by paying a portion of its local sales tax revenues to MTS and Inspired Development for no consideration and without a public purpose, Fillmore has made a gift of public funds in violation of article XVI, section 6 of the California Constitution. They allege in their second count that by agreeing to disburse a portion of its local sales tax revenues, Fillmore has incurred indebtedness in excess of its annual revenues and has exceeded the debt limit established by article XVI, section 18 of the California Constitution without voter approval. They allege in their third count that Fillmore has disbursed its local sales tax revenues in an amount in excess of that allowed under article XIII B, section 1 of the California Constitution without voter approval. They allege in their fourth count for contracting away police power that Fillmore's agreements with MTS and Inspired Development unlawfully bargain away Fillmore's police power with respect to taxation and are against public policy.

They allege in their fifth count for fraud that defendants made misrepresentations to the SBE resulting in the allocation of local sales tax revenues to Fillmore instead of to Industry and Livermore, where the sales actually occurred. Their 12th count for declaratory relief incorporates the prior allegations in the complaint, alleges that Fillmore's agreements with MTS and Inspired Development were beyond Fillmore's power at the time the agreements were made, and seeks a judicial declaration that the agreements are unlawful. Their prayer for relief also seeks a determination that the agreements are unlawful and invalid.

We conclude that Industry and Livermore have an interest in the outcome of this litigation with respect to the first through fourth and 12th counts because they allege that they are harmed by the diversion of local sales tax revenues allegedly resulting from the agreements that they seek to invalidate. Industry and Livermore have an interest in the outcome of this litigation with respect to the fifth count[13] for fraud because that count, if successful, may result in an award of damages to Industry and Livermore. We therefore conclude that Industry and Livermore have standing to bring these counts and that they need not establish a basis for standing as taxpayers under section 526a.

d. *The Exhaustion of Administrative Remedies Doctrine Is Inapplicable*

The trial court apparently concluded that Industry's and Livermore's failure to exhaust their administrative remedies with the SBE justified the sustaining of the demurrer to their fifth through 10th counts. Fillmore argues on appeal that the failure to exhaust administrative remedies justifies the sustaining of the demurrer to all counts at issue in this appeal. Industry and Livermore contend the exhaustion requirement is inapplicable.

A party generally must exhaust its administrative remedies before seeking relief in court. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080 [29 Cal.Rptr.3d 234, 112 P.3d 623].) The exhaustion doctrine has at least three distinct strands. (*Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 930 [16 Cal.Rptr.3d 849, 94 P.3d 1055] (*Jonathan Neil*).) First, when a statute or regulation establishes a quasi-judicial administrative tribunal to adjudicate statutory remedies, a party generally must pursue a remedy before that tribunal and exhaust any administrative appeal before seeking relief in court. (*Ibid.*) " ' "The administrative tribunal is created by law to adjudicate the issue sought to be presented to the court. The claim or 'cause of action' is

---

[13] As we explain below, the fifth and 10th counts will be treated as a single count for fraud.

within the special jurisdiction of the administrative tribunal, and the courts may act only to *review* the final administrative determination. If a court allowed a suit to be maintained prior to such final determination, it would be interfering with the subject matter jurisdiction of another tribunal." ' " (*Ibid.*)

Second, a party challenging a decision by a public or private organization must pursue an internal remedy provided by that organization before challenging the decision in court. (*Jonathan Neil, supra,* 33 Cal.4th at p. 930; *Rojo v. Kliger* (1990) 52 Cal.3d 65, 86 [276 Cal.Rptr. 130, 801 P.2d 373].)

■ Third, courts have required parties to pursue remedies before quasi-judicial administrative tribunals before pursuing common law causes of action in court in some circumstances despite the absence of a clear legislative intent that an administrative remedy be pursued in the first instance. (*Jonathan Neil, supra,* 33 Cal.4th at p. 931; *Rojo v. Kliger, supra,* 52 Cal.3d at p. 87.) "In such cases, although the legislative intent to [require] resort in the first instance to administrative remedies is not entirely clear, courts have required exhaustion when they 'have expressly or implicitly determined that the administrative agency possesses a specialized and specific body of expertise in a field that particularly equips it to handle the subject matter of the dispute.' " (*Jonathan Neil, supra,* at p. 931.) Exhaustion may be required if the application of the agency's expertise to the matter in the first instance is considered " ' "indispensable." ' " (*Ibid.*)

■ The primary jurisdiction doctrine is closely related to the doctrine of exhaustion of administrative remedies, and courts have often confused the two concepts. (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390 [6 Cal.Rptr.2d 487, 826 P.2d 730].) The primary jurisdiction doctrine requires a party to resort to an administrative remedy to resolve issues within the agency's particular area of expertise. (*Jonathan Neil, supra,* 33 Cal.4th at p. 931.) While the exhaustion doctrine applies where the claim or cause of action is originally within the exclusive jurisdiction of an administrative agency, the primary jurisdiction doctrine applies where the cause of action is originally cognizable in the courts but requires the resolution of issues that are within the special competence of an administrative body. (*Id.* at pp. 931–932; *Farmers, supra,* 2 Cal.4th at p. 390.) Application of the primary jurisdiction doctrine results in a stay of the action pending the resolution of the issues within the expertise of the administrative body, rather than a dismissal. (*Jonathan Neil, supra,* at p. 936; *South Bay Creditors Trust v. General Motors Acceptance Corp.* (1999) 69 Cal.App.4th 1068, 1081 [82 Cal.Rptr.2d 1].)

" 'The policy reasons behind the two doctrines are similar and overlapping. The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary). [Citations.] . . . [T]he primary jurisdiction doctrine advances two related policies: it enhances court decisionmaking and efficiency by allowing courts to take advantage of administrative expertise, and it helps assure uniform application of regulatory laws. [Citations.]' " (*Jonathan Neil, supra*, 33 Cal.4th at p. 932.)

We conclude that the doctrine of exhaustion of administrative remedies is inapplicable here. The first through fifth, 10th, and 12th counts are originally cognizable in court and are not within the exclusive jurisdiction of the SBE. (See *Jonathan Neil, supra*, 33 Cal.4th at p. 933.) Moreover, the issues raised in these counts are predominantly legal rather than technical in nature and do not implicate the regulatory authority and expertise of the SBE to such a degree as to suggest that a prior administrative determination is indispensable to a judicial determination. (See *id.* at p. 931.) Accordingly, we cannot affirm the sustaining of Fillmore's demurrer to these counts based on the failure to exhaust administrative remedies.[14]

### e. *Industry and Livermore Adequately Allege a Count for Fraud*

██ The essential elements of fraud, generally, are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [49 Cal.Rptr.2d 377, 909 P.2d 981].) ██ Reliance by the plaintiff's agent may be imputed to the plaintiff. (*Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1568 [54 Cal.Rptr.2d 468]; *Grinnell v. Charles Pfizer & Co.* (1969) 274 Cal.App.2d 424, 441 [79 Cal.Rptr. 369].) ██ Each element must be pleaded with particularity so as to apprise the defendant of the specific grounds for the charge and enable the court to determine whether there is any basis for the cause of action, although less specificity is required if the defendant would likely have greater knowledge of the facts than the plaintiff. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216–217 [197 Cal.Rptr. 783, 673 P.2d 660].)

██ Civil conspiracy is not an independent tort. Instead, it is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or

---

[14] Defendants did not assert the primary jurisdiction doctrine in the trial court. We believe that the trial court in the first instance should decide whether this case should be stayed under the primary jurisdiction doctrine if the issue is raised on remand.

design in its perpetration. [Citation.] By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. [Citation.] In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511 [28 Cal.Rptr.2d 475, 869 P.2d 454].) ▮ The elements of a civil conspiracy are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages. (*Ibid.*) We construe the fifth count for fraud and the 10th count for conspiracy together as a single count for fraud.

▮ Cities and counties are authorized to impose local sales and use taxes by ordinance. (Rev. & Tax. Code, §§ 7202, 7203, 7203.2.) The SBE administers such local tax ordinances, collects the tax on behalf of the local jurisdiction, and distributes the amount collected to the appropriate local jurisdiction. (*Id.*, §§ 7204, 7204.3.) Whether a local jurisdiction is entitled to receive local sales tax on sales by a particular retailer ordinarily depends on the location of the retailer's place of business or, if the retailer maintains more than one place of business, the place at which the sale is consummated. (*Id.*, § 7205.) Retailers routinely submit tax returns to the SBE reporting the locations of their sales transactions. Based on those returns, the SBE transmits the local sales tax revenues to the appropriate local jurisdictions.

Industry and Livermore allege that Fillmore entered into the written agreements with MTS and Inspired Development for the purpose of diverting sales tax revenues away from the local communities where the taxable sales were actually occurring. They allege that MTS and Inspired Development solicited retailers to establish sham offices in Fillmore, that several retailers, including Owens & Minor, established sham offices in Fillmore pursuant to those solicitations, and that Owens & Minor reported to the SBE that taxable sales had occurred at a sham office in Fillmore. They allege that Fillmore and the other defendants knew that the representations made to the SBE were false and knew that the misrepresentations would cause the SBE to allocate to Fillmore tax revenues that should have been allocated to Industry and Livermore. They also allege that the SBE is their agent for purposes of collecting and allocating sales taxes intended for Industry and Livermore. We conclude that these allegations are sufficient to state a cause of action for fraud against all defendants as coconspirators.

▮ The trial court concluded that the SBE was not the agent of Industry and Livermore. An allegation of agency is an allegation of ultimate fact that must be accepted as true for purposes of ruling on a demurrer. (*Skopp v. Weaver* (1976) 16 Cal.3d 432, 437 [128 Cal.Rptr. 19, 546 P.2d 307].)

Contrary to defendants' argument, the fact that the SBE is a state agency does not necessarily preclude the existence of an agency relationship between the SBE and the local jurisdictions on behalf of which the SBE collects local sales taxes. The allegations of misrepresentations to the SBE as the agent of Industry and Livermore are sufficient for pleading purposes to satisfy the element of a misrepresentation.

The trial court also concluded that Industry and Livermore failed to adequately allege the element of reliance. Industry and Livermore allege in their complaint that the SBE as their agent relied on the alleged misrepresentations to their detriment. An agent's reliance may be attributed to the principal, as we have stated. Industry and Livermore adequately allege the element of reliance.

Accordingly, we conclude that the sustaining of the demurrer to the fifth and 10th counts was error and that those separately alleged counts together constitute a single count for fraud.

### 2. The Striking of the Fraud and Conspiracy Counts Was Error

#### a. Special Motion to Strike

A special motion to strike is a procedural remedy to dispose of lawsuits brought to chill the valid exercise of a party's constitutional right of petition or free speech. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].) The purpose of the anti-SLAPP statute is "to encourage continued participation in matters of public significance" and prevent meritless litigation designed to chill the valid exercise of the constitutional rights of petition and free speech. (§ 425.16, subd. (a).) The Legislature has declared that the statute must be "construed broadly" to that end. (*Ibid.*)

A defendant moving to strike a cause of action under the anti-SLAPP statute has the initial burden to show that the cause of action "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" (§ 425.16, subd. (b)(1)). (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 [12 Cal.Rptr.3d 54, 87 P.3d 802].) If the defendant makes this showing, the plaintiff must establish a probability of prevailing on the merits of the claim to avoid a dismissal. (§ 425.16, subd. (b)(1); *Zamos, supra*, at p. 965.) On appeal, we independently review both of these determinations by the trial court. (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1345–1346 [63 Cal.Rptr.3d 798].)

An " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public

issue' " is defined by statute to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

■ A cause of action is one "arising from" protected activity within the meaning of section 425.16, subdivision (b)(1) only if the act on which the cause of action is based was an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) Whether the "arising from" requirement is satisfied depends on the " 'gravamen or principal thrust' " of the claim. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477 [87 Cal.Rptr.3d 275, 198 P.3d 66], quoting *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 193 [6 Cal.Rptr.3d 494].) A cause of action does not arise from protected activity for purposes of the anti-SLAPP statute if the protected activity is merely incidental to the cause of action. (*Martinez, supra,* at p. 188.) In deciding whether the "arising from" requirement is satisfied, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

■ A cause of action that arises from protected activity is subject to dismissal unless the plaintiff establishes a probability of prevailing on the claim. (§ 425.16, subd. (b)(1).) A plaintiff establishes a probability of prevailing on the claim by showing that the complaint is legally sufficient and supported by a prima facie showing of facts that, if proved at trial, would support a judgment in the plaintiff's favor. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713–714 [54 Cal.Rptr.3d 775, 151 P.3d 1185].) The court cannot weigh the evidence, but must determine as a matter of law whether the evidence is sufficient to support a judgment in the plaintiff's favor. (*Ibid.*) The defendant can defeat the plaintiff's evidentiary showing by presenting evidence that establishes as a matter of law that the plaintiff cannot prevail. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].)

b. *The Fraud and Conspiracy Counts Do Not Arise from Protected Activity Under the Anti-SLAPP Statute*

Industry and Livermore allege in their fifth count for fraud that the SBE is their agent for collecting and allocating local sales taxes. They allege that defendants intentionally misrepresented material facts to and concealed material facts from the SBE. They allege that Fillmore, MTS, and Inspired Development misrepresented and concealed material facts by contracting with retailers, including Owens & Minor, to establish sham offices in Fillmore for the purpose of falsely reporting those locations to the SBE as the point of sale. They allege that Owens & Minor then misrepresented and concealed material facts by falsely reporting to the SBE that a location in Fillmore was the point of sale. Industry and Livermore allege in their 10th count for conspiracy that defendants acted in concert with the intent to defraud the SBE, Industry, and Livermore, and to convert the local sales tax revenues.

The gravamen or principal thrust of those fraud and conspiracy counts is that defendants knowingly participated in a joint effort to defraud the SBE, Industry, and Livermore and to deprive Industry and Livermore of local sales tax revenues to which they were otherwise entitled by making false reports to the SBE. The alleged false reporting to the SBE is part of the gravamen of these claims and is not merely incidental to the claims.

As already noted, an act in furtherance of a defendant's constitutional right of petition or free speech in connection with a public issue includes "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" and "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e).) Clause (1) is limited to statements made in the course of an official proceeding, while clause (2) includes statements made "in connection with" an official proceeding or "in connection with" an issue under consideration or review by an official body. (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 198 [46 Cal.Rptr.3d 41, 138 P.3d 193]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*).)

Not every communication with a government agency is a statement made before or in connection with an official proceeding, or in connection with an issue under consideration or review by an official body, within the meaning of clauses (1) and (2) of section 425.16, subdivision (e). Several opinions illustrate the scope of the anti-SLAPP statute in this regard.

*Blackburn v. Brady* (2004) 116 Cal.App.4th 670 [10 Cal.Rptr.3d 696] involved a cause of action arising from an allegedly fraudulent bid at a public auction conducted by the sheriff. *Blackburn* stated that a statement made in an "official proceeding" within the meaning of clause (1) of section 425.16, subdivision (e) " 'must occur in connection with "an issue under consideration or review" in the proceeding.' [Citations.]" (*Blackburn, supra,* at p. 677.) *Blackburn* stated that a sheriff's sale was a "ministerial event" that did not "concern an issue under review or determine some disputed matter as contemplated under the anti-SLAPP law." (*Ibid.*) Instead, a sheriff's sale "consists merely of offers and the acceptance of the highest bid made according to certain requirements without any determination based on the exercise of one's free speech or petition rights." (*Ibid.*) *Blackburn* therefore concluded that the sheriff's sale was not an "official proceeding" within the meaning of clause (1) of section 425.16, subdivision (e).

*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118 [41 Cal.Rptr.3d 1] involved an action arising in part from a contractor's service of stop notices on a school district. *A.F. Brown* stated that there was "no 'official proceeding' in progress" at time of the stop notices, and that the stop notices required the district to withhold funds due the general contractor but "did not request the district to commence any type of proceeding, or to make any type of administrative or adjudicatory decision." (*Id.* at p. 1129.) *A.F. Brown* therefore concluded that the stop notices did not involve an "official proceeding" and that clause (1) of section 425.16, subdivision (e) was inapplicable. (*A.F. Brown, supra,* at p. 1129.)

*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921 [116 Cal.Rptr.2d 187] involved a cross-complaint arising in part from a contractor's submission of contractual claims for payment on a public works project. *Kajima* held, "The submission of contractual claims for payment in the regular course of business before the commencement of litigation simply is not an act in furtherance of the right of petition or free speech within the meaning of the anti-SLAPP statute. [Citations.]" (*Id.* at p. 932.)

 The SBE administers local tax ordinances, collects the tax on behalf of the local jurisdiction, and distributes the amount collected to the appropriate local jurisdiction, as we have stated. (Rev. & Tax. Code, §§ 7204, 7204.3.) Whether a local jurisdiction is entitled to receive local sales tax on sales by a particular retailer ordinarily depends on the location of the retailer's place of business or, if the retailer maintains more than one place of business, the place at which the sale is consummated. (*Id.*, § 7205.)

Retailers routinely submit tax returns to the SBE reporting the locations of their sales transactions. Based on those returns, the SBE transmits the local sales tax revenues to the appropriate local jurisdictions. The SBE's transmission of local sales tax revenues based on a retailer's tax returns is a nondiscretionary, ministerial act that involves no deliberation or discretionary decisionmaking. In our view, a retailer's submission of sales tax returns to the SBE in the ordinary course of business and the SBE's transmission of local sales tax revenues to local jurisdictions based on the returns does not involve either a "proceeding" or "an issue under consideration or review" by an official body within the meaning of clauses (1) and (2) of section 425.16, subdivision (e). Thus, the fraud and conspiracy counts do not arise from an act in furtherance of defendants' constitutional right of petition or free speech in connection with a public issue under clause (1) or (2).

We also reject defendants' argument that the fraud and conspiracy counts arise from "other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e), cl. (4)). Clauses (1) and (2) of subdivision (e) describe conduct that is legislatively determined to be in furtherance of a person's constitutional right of petition or free speech in connection with a public issue for purposes of the anti-SLAPP statute, so a court need not separately determine whether the conduct involves a public issue. (*Briggs, supra*, 19 Cal.4th at pp. 1113, 1116–1117.) Clause (4), in contrast, expressly states that the conduct must be "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest," so the court must determine whether the conduct involves such a constitutionally protected activity in connection with a public issue. Not every communication by or to a public entity satisfies this requirement.

The fact that conduct, when considered in the abstract, may have particular public policy implications does not render it "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e), cl. (4)). The inquiry must focus on the content of the speech or other conduct on which the cause of action is based, rather than generalities or abstractions. (*Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1280 [55 Cal.Rptr.3d 544]; *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 111 [15 Cal.Rptr.3d 215].) Consistent with the purpose of the anti-SLAPP statute "to encourage continued participation in matters of public significance" (§ 425.16, subd. (a)), we believe that under clause (4), the constitutionally protected free speech or petitioning activity must directly contribute in some manner to the discussion of an issue of

public interest or seek to influence a discretionary decision by an official body relating to such an issue.

MTS argues that statements made by Owens & Minor in its sales tax returns submitted to the SBE concerned an issue of public interest because the allocation of local sales tax revenues was an issue of public interest and had been the subject of public debate. The routine submission of sales tax returns to the SBE clearly related to the allocation of local sales taxes, but the act of submitting those returns was not part of any discussion of that subject or any effort to influence an official policy or other discretionary decision relating to the allocation of local sales taxes. We therefore conclude that the fraud and conspiracy counts do not arise from an act in furtherance of defendants' constitutional right of petition or free speech in connection with a public issue under clause (4) of section 425.16, subdivision (e) and that the striking of those counts was error.

### 3. *The Trial Court Must Redetermine Defendants' Entitlement to Attorney Fees and the Amount of Any Fee Award*

 A defendant prevailing on a special motion to strike is entitled to recover its attorney fees and costs. (§ 425.16, subd. (c)(1); *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 [104 Cal.Rptr.2d 377, 17 P.3d 735].) The defendant can recover only its fees and costs in connection with the motion, not the entire action. (*Jackson v. Yarbray* (2009) 179 Cal.App.4th 75, 92 [101 Cal.Rptr.3d 303]; *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320 [81 Cal.Rptr.3d 866].)

A defendant need not succeed in striking every challenged claim to be considered a prevailing defendant entitled to recover attorney fees and costs under the statute. Instead, a defendant is entitled to recover fees and costs in connection with a partially successful motion, unless the results obtained are insignificant and of no practical benefit to the defendant. (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 339–340 [42 Cal.Rptr.3d 607].) A court awarding fees to the prevailing defendant on a partially successful special motion to strike must exercise its discretion in determining the amount of fees and costs to award in light of the defendant's relative success in achieving its litigation objectives. (*Id.* at pp. 344–345; cf. *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 989 [104 Cal.Rptr.3d 710, 224 P.3d 41] [fee award under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.)].)

Industry and Livermore challenge the granting of the special motion to strike as to the counts for fraud and conspiracy only and do not challenge the striking of counts six through nine. Fillmore therefore has succeeded in

striking counts six through nine, but has not succeeded as to the counts for fraud and conspiracy. Our reversal in part of the order granting the special motion to strike compels the conclusion that the trial court must exercise its discretion anew in determining whether defendants are prevailing parties and, if so, the appropriate amount of fees and costs to award. In light of our conclusion, we need not address Industry's and Livermore's other arguments regarding the attorney fee awards.

One argument, however, merits further discussion. Fillmore sought $77,957.88 in attorney fees and costs, including more than $20,000 in fees and costs incurred before the complaint was filed. The prelitigation fees and costs related primarily to the claim presented by Industry and Livermore in August 2008, Fillmore's tendering of the claim to a joint powers insurance authority, and its appeal from the rejection of that tender. The trial court awarded Fillmore the full amount of fees and costs requested.

A defendant prevailing on a special motion to strike can recover its fees and costs only for work in connection with the special motion to strike, as we have stated. The amount awarded by the trial court includes fees relating to the rejection of a claim that was presented eight months before the complaint was filed and, necessarily, several months before a special motion to strike was even contemplated. Such fees cannot be said to have been incurred in connection with the special motion to strike and thus are not recoverable.

We need not decide whether the fee awards were excessive in any other respect. Instead, the trial court on remand must reconsider each defendant's entitlement to fees and costs under the anti-SLAPP statute and the appropriate amount of any fee award.

## DISPOSITION

The judgments in favor of all defendants are reversed with directions to the trial court to (1) vacate the order sustaining the demurrers by Fillmore, Inspired Development, and MTS and enter a new order sustaining their demurrers to counts six through nine and eleven and overruling their demurrers to counts one through five, ten, and twelve and (2) vacate the order sustaining the demurrer by Owens & Minor and enter a new order sustaining its demurrer to counts six through nine, eleven, and twelve and overruling its demurrer to counts one through five and ten. The order granting the special motion to strike is reversed as to the striking of counts five and ten against all defendants, and affirmed as to the striking of counts six through nine against all defendants. The order awarding attorney fees and costs to each defendant

is reversed with directions to the trial court to determine whether each defendant is entitled to an award and the reasonable amount of any award. Industry and Livermore are entitled to recover their costs on appeal.

Kitching, J., and Aldrich, J., concurred.

On August 24, 2011, the opinion was modified to read as printed above. The petition of respondent Owens & Minor, Inc., for review by the Supreme Court was denied November 22, 2011, S196543.