Filed 8/19/22; Certified for Publication 9/16/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| FUZU LI,<br><br>　　　　Cross-complainant and<br>　　　　Respondent,<br><br>　　　　v.<br><br>JIGANG JIN et al.,<br><br>　　　　Cross-defendants and Appellants. | H048817<br>(Santa Clara County<br>Super. Ct. No. 19CV344983) |

In an escalating dispute over governance of their alumni association, Jigang Jin sued Fuzu Li for defamation, based on the alleged falsity of Fuzu Li's complaints to fellow alumni about Jin's handling of the association's incorporation and filing of its Internal Revenue Service (IRS) application for tax-exempt status. Fuzu Li then cross-complained, asserting various causes of action against Jin and Yaning Li, arising from their allegedly wrongful seizure of control of the association, including Jin's filing of (1) the IRS application, (2) articles of incorporation and corporate statement of information with the California Secretary of State, and (3) a Franchise Tax Board application for state tax-exempt status. Jin and Yaning Li now appeal from the trial court's denial of their special motions to strike Fuzu Li's first amended cross-complaint

under Code of Civil Procedure section 425.16.[1]  The trial court found Jin and Yaning Li failed to make a prima facie showing that their alleged actions that form the basis of Fuzu Li's claims were activities protected by the anti-SLAPP statute.  We conclude that Jin's submission to the IRS of an application for tax-exempt status is protected activity under section 425.16, subdivision (e)(1) and (2).  Accordingly, we reverse the order and remand the matter for determination of whether Fuzu Li can demonstrate that his claims relating to the submission of the IRS application have minimal merit.

## I.  BACKGROUND[2]

In 2018, Yaning Li was president of Xi'an Jiaotong University Alumni Association of Northern California (Association), Jigang Jin was the executive vice president, and Fuzu Li served as the vice president.

In February 2018, the parties discussed the Association incorporating as a nonprofit.  On March 27, 2018, Jigang Jin filed "Articles of Incorporation of a Nonprofit Public Benefit Corporation" with the California Secretary of State.  He also filed a Statement of Information with the California Secretary of State on June 25, 2018.  In both the Articles of Incorporation and the Statement of Information, Jigang Jin used an address in Santa Clara, CA for the Association's business address, but the address did not belong to the Association.

In the Statement of Information, Jigang Jin listed himself as Secretary and Chief Financial Officer, and Yaning Li as Chief Executive Officer.  This information was hidden from Fuzu Li until March 16, 2019.

On November 17, 2018, 13 members of the Association met:  the members present approved a temporary amendment to the Association's bylaws and elected a new board of

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

[2] We take the factual background from the allegations of the first amended cross-complaint, the pleading to which the special motion to strike is directed.

directors. Fuzu Li, then the Association's vice president, was elected to be on the board of directors and take the position of secretary. But Fuzu Li did not attend the meeting and was not informed of his position on the newly constituted board.

On November 29, 2018, Jigang Jin filed with the IRS the Association's application for tax-exempt status. The application listed Fuzu Li as a director, but no notice was given to him and he did not give his consent to be included on the form. Further, the mailing address given was not a correct mailing address for Fuzu Li.

On December 20, 2018, the IRS approved tax-exemption status for the Association under Internal Revenue Code section 501(c)(3) as a public charity. Neither Jigang Jin nor Yaning Li reported the approval to the members of the Association.

On January 4, 2019, Jigang Jin filed another form—Submission Exemption Request—with the Franchise Tax Board, again without any board of directors meeting or consent.

In February and March of 2019, several meetings and conversations took place regarding another proposed bylaw. However, the new draft bylaw was never discussed at a board of directors meeting.

At a meeting on March 16, 2019, Jigang Jin proposed a vote on the new draft bylaw and a newly nominated board of directors. Neither proposal passed. Near the end of the meeting, Fuzu Li heard for the first time that he had been listed as one of three initial directors on the application to the IRS. This caused him to become upset that his personal information had been used without his consent and that he had not been told he was on the board of directors.

On March 16, 2019, Fuzu Li posted a message in the Association Wechat group telling alumni that Jigang Jin registered a nonprofit corporation using Fuzu Li's personal information without telling him and that Fuzu Li felt he had been "fooled." Fuzu Li also expressed concern based on his belief that Jigang Jin would have needed to provide Fuzu Li's social security number and driver's license number in the application.

3

On March 20, 2019, Jigang Jin filed a complaint against Fuzu Li, alleging causes of action for: (1) defamation – libel; (2) defamation – libel per se; and (3) false light.

Fuzu Li filed a cross-complaint on July 26, 2019, including causes of action for: (1) breach of fiduciary duty; (2) constructive fraud; (3) commercial misappropriation of likeness under Civil Code section 3344; and (4) common law misappropriation of likeness. On June 11, 2020, the trial court granted Jigang Jin and Yaning Li's motion for judgment on the pleadings as to the first and third causes of action with leave to amend and denied the motion as to the second and fourth causes of action. On June 30, 2020, Fuzu Li filed the operative first amended cross-complaint, setting forth the following causes of action: (1) breach of charitable trust; (2) constructive fraud; (3) fraud and intentional deceit; (4) civil conspiracy; (5) commercial misappropriation of likeness under Civil Code section 3344; (6) common law misappropriation of likeness; (7) negligent infliction of emotional distress.

Jigang Jin and Yaning Li each filed a special motion to strike the first amended cross-complaint pursuant to section 425.16. On December 2, 2020, the trial court denied the motions, finding that Jigang Jin and Yaning Li failed to meet their burden in the first step of the anti-SLAPP analysis. The court did not reach the second step of the analysis.

Jigang Jin and Yaning Li timely appealed.

## II.   DISCUSSION

Jigang Jin and Yaning Li have filed a joint opening brief in which they assert that the cross-claims all arise from communications made with the California Secretary of State (SOS), California Franchise Tax Board (FTB), and IRS. Under the first step of the anti-SLAPP analysis, they argue these communications are protected petitioning activity because they constitute writings made in connection with an executive or official proceeding, and in connection with an issue of public interest. Fuzu Li disputes both of these contentions.

4

With regard to the second step of the anti-SLAPP analysis, Jigang Jin and Yaning Li contend Jigang Jin's alleged conduct is protected by the litigation privilege of Civil Code section 47, subdivision (b).  Fuzu Li argues that the litigation privilege does not apply here because there was no request that any public agency investigate or remedy any wrongdoing.  On reply, Jigang Jin and Yaning Li also argue that Fuzu Li cannot prevail on the merits.

**A.**     ***Legal Standard***

Section 425.16, "commonly known as the anti-SLAPP statute, allows defendants to request early judicial screening of legal claims targeting free speech or petitioning activities." (*Wilson v. Cable News Network, Inc*. (2019) 7 Cal.5th 871, 880-881.)  The anti-SLAPP statute defines four categories of protected activity:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

The California Supreme Court has articulated a two-step procedure for litigation of an anti-SLAPP motion.  "First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.]  Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.]  If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

5

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) "We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Ibid*.) "In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Ibid*.)

**B.    *First Step of the Anti-SLAPP Analysis***

Jigang Jin and Yaning Li argue that the documents submitted to the SOS, IRS, and FTB gave rise to Fuzu Li's cross-claims. Fuzu Li does not dispute this assertion, and specifically acknowledges that the conduct at issue is the filing of the "documents with the federal and state agencies to obtain and maintain nonprofit and tax-exempt status for the Association." The question, therefore, is whether the submission of any of these documents qualifies as protected activity under one of the categories in the anti-SLAPP statute. To the extent that any one of the documents is protected and forms a basis for a claim, "[i]t does not matter that other unprotected acts may also have been alleged within what has been labeled a single cause of action; these are 'disregarded at this stage.' [Citation.] So long as a 'court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached' with respect to these claims." (*Bonni*, *supra*, 11 Cal.5th at p. 1010.)

**1.    *Writings Made Before and in Connection with an Official Proceeding***

Although the first amended cross-complaint contains allegations regarding the documents submitted to the SOS, IRS, and FTB, Jigang Jin and Yaning Li focus mainly on the tax-exemption application to the IRS, asserting in their reply brief that it is the gravamen of Fuzu Li's claims. For this reason, we first turn to the IRS application, but

6

our discussion regarding that application will inform our conclusions on the other three documents, with a different end result.

### a. *IRS Application*

As stated previously, the anti-SLAPP statute protects four types of activity. The first two are similar: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law. . . ." (§ 425.16, subd. (e).) There being no dispute that the IRS is an executive agency, the parties' disagreement centers on whether the agency's determination of tax-exempt status constitutes a " 'proceeding' " within the meaning of the anti-SLAPP statute.[3] As the trial court here recognized, "a nondiscretionary, ministerial act that involves no deliberation or discretionary decisionmaking" does not extend protected status to a statement intended to initiate the routine performance of that ministerial act. (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 217 (*City of Industry*).) In our independent judgment, however, we conclude that IRS determination of tax-exempt status is not purely ministerial, and that the application process is therefore a "proceeding" before an executive agency.

As a threshold matter, Internal Revenue Code section 7430(c)(5) provides that "any procedure or other action before the Internal Revenue Service" is an " 'administrative proceeding.' " (26 U.S.C. § 7430(c)(5).) The IRS may grant a request for tax-exempt status under Internal Revenue Code section 501 by "[a] ruling or determination letter . . . provided [the organization's] application and supporting

---

[3] "Under section 425.16, a defendant moving to strike a cause of action arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding need *not* separately demonstrate that the statement concerned an issue of public significance." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123, fn. omitted.)

7

documents establish that it meets the particular requirements of the section under which exemption is claimed." (26 C.F.R. § 601.201(n)(1)(ii).) In a "ruling," the IRS's National Office "interprets and applies the tax laws to a specific set of facts." (26 C.F.R. § 601.201(a)(2).) In a " 'determination letter,' " an IRS district director similarly "applies to the particular facts involved, the principles and precedents previously announced by the National Office."[4] (26 C.F.R. § 601.201(a)(3).) The applicable tax laws require the IRS to determine whether the corporation seeking tax-exempt status is "organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition . . . , or for the prevention of cruelty to children or animals." (26 U.S.C. § 501(c)(3).) "If an organization fails to meet either the organizational test or the operational test, it is not exempt." (26 C.F.R. § 1.501(c)(3)-1(a)(1).) The IRS accordingly assesses whether "the articles of organization . . . limit the organization's purpose to one or more exempt purposes and [do] not expressly empower such organization to engage, except insubstantially, in activities which do not further its exempt purpose." (*Columbia Park and Recreation Ass'n., Inc. v. C.I.R.* (1987) 88 T.C. 1, 13-14.) The IRS also assesses whether "an organization . . . engage[s] extensively in activities which accomplish one or more of the exempt purposes specified in section 501(c)(3)." (*Id*. at p. 24.)

The procedures for challenging an adverse determination likewise reflect the nonministerial character of an IRS determination of tax-exempt status. The organization may challenge the IRS determination by an action for declaratory judgment in the United

---

[4] Although Internal Revenue district directors are empowered to issue determination letters on requests for exempt status, "[i]f the exemption application . . . involves an issue which is not covered by published precedent or on which there may be nonuniformity between districts, or if the National Office had issued a previous contrary ruling or technical advice on the issue, the key district director must request technical advice from the National Office." (26 C.F.R. § 601.201(n)(2)(iv).)

8

States Tax Court, the United States Court of Federal Claims, or the United States District Court for the District of Columbia.  (26 U.S.C. § 7428.)  In contrast, enforcement actions against a federal agency for failure to perform a " ' "nondiscretionary, ministerial" ' " duty are governed by the Mandamus Act, which vests original jurisdiction in any district court.  (*Plaskett v. Wormuth* (9th Cir. 2021) 18 F.4th 1072, 1081; 28 U.S.C. § 1361.)  One who successfully challenges a denial of tax-exempt status may seek an award of reasonable administrative and litigation costs, unless "the United States establishes that its position was substantially justified."  (26 U.S.C. § 7430(a) and (c)(4)(B); see also *Friends of Benedictines in Holy Land, Inc. v. Commissioner of Internal Revenue* (2018) 150 T.C. 107, 114-115.)  The very nature of "substantial justification" as a basis for the IRS to defeat the claim for costs by an otherwise prevailing applicant for tax-exempt status itself underscores the exercise of deliberative judgment inherent in the official action.  These are the hallmarks of adjudicatory decisionmaking, not nondeliberative, ministerial action.

To be sure, the mere fact of a government agency's involvement in a transaction does not, without more, make a proceeding "official":  "[M]inisterial acts involving 'primarily private transactions' do not trigger the anti-SLAPP statute."  (*Ray Charles Foundation v. Robinson* (C.D. Cal. 2013) 919 F.Supp.2d 1054, 1062, reversed on other grounds at 795 F.3d 1109, quoting *Mindys Cosmetics, Inc. v. Dakar* (9th Cir. 2010) 611 F.3d 590, 597 (*Mindys Cosmetics*).)  In *Mindys Cosmetics*, the court concluded that "[f]iling a trademark application is more than merely a ministerial act connected with a business transaction.  It is an attempt to establish a property right under a comprehensive federal statutory scheme." (*Mindys Cosmetics*, *supra*, at p. 597.)  Seeking tax-exempt status from the IRS is likewise an attempt to establish a right under a comprehensive federal statutory scheme.

We recognize the application Jin submitted to the IRS is short and mostly composed of checkboxes.  As Jigang Jin and Yaning Li point out, however, the form

9

includes a space for a brief narrative description of the organization's activities. The plain purpose of the narrative description is to inform the agency's determination whether the organizational and operational tests are satisfied. And the IRS is guided in how to make that determination by the myriad tax court cases that examine detailed factual scenarios to decide whether particular organizations qualify for tax-exempt status. (See, e.g., *Aid to Artisans, Inc. v. Commissioner of Internal Revenue* (1978) 71 T.C. 202; *American Campaign Academy v. C.I.R.* (1989) 92 T.C. 1053.)

Fuzu Li's effort to analogize *City of Industry*, *supra*, 198 Cal.App.4th 191 is unavailing. In *City of Industry*, the court found the California State Board of Equalization's distribution of local sales tax revenues to the relevant local jurisdiction to be a nondiscretionary, ministerial act that involves no deliberation or discretionary decisionmaking. (*Id*. at p. 217.) The court reasoned that retailers submit their sales tax returns "in the ordinary course of business," and that the Board of Equalization identified the local jurisdiction entitled to receive the sales tax revenues, under Revenue and Taxation Code section 7205, based merely on the retailer's reported principal place of business, if it had one, or else the reported location of the sales transaction. (*City of Industry*, *supra*, at p. 216.) Therefore, the retailer's submission of its sales tax returns did not initiate either a " 'proceeding' " or " 'an issue under consideration or review' " by an official body within the meaning of section 425.16, subdivision (e). (*Ibid*.) That *City of Industry* involved an issue related to taxes does not, without more, make it controlling: the Board of Equalization's distribution of sales tax revenues involved no exercise of agency judgment, unlike the IRS determination of tax exemption.

At oral argument, Fuzu Li asserted that the potential for litigation to challenge an adverse determination is immaterial where, as here, the application was granted without resort to judicial review. But the plain language of the anti-SLAPP statute is broad, protecting "*any* act . . . in furtherance of a person's right of petition or free speech" and therefore extends to "*any* . . . official proceeding authorized by law." (§ 425.16,

subds. (b)(1) and (e), italics added.) In our application of a statute intended "to encourage . . . participation" rather than allow it to be "chilled through abuse of the judicial process" (§ 425.16, subd. (a)), it is the initiation of the proceeding itself that matters, rather than the eventual scope and breadth of the proceeding as it ultimately happens to unfold. Just as allegations in a complaint would be protected activity in a judicial proceeding, whether or not the lawsuit ultimately proceeded by default rather than by trial, the mere fact that the IRS application met the criteria for "EZ" processing is immaterial to whether the IRS consideration of the application was an official proceeding of the executive agency.

For these reasons, we conclude that the IRS application is entitled to protection under section 425.16, subd. (e)(1) and (2) as a writing made before or in connection with an official proceeding.

### b. *Documents Submitted to the SOS and FTB*

Aside from the IRS application, three other documents are at issue: (1) "Articles of Incorporation of a Nonprofit Public Benefit Corporation" filed with the California Secretary of State; (2) a Statement of Information filed with the California Secretary of State; and (3) a Submission Exemption Request filed with the Franchise Tax Board.

Unlike the IRS application, none of these three other documents involve or relate to an issue under consideration in an official proceeding. The filing of articles of incorporation establishes a corporation's existence without the necessity of action or approval by the Secretary of State or any other government agency. (Corp. Code, § 5120, subd. (c).) The Statement of Information serves only to provide the public with basic information about the new corporation. Although the Submission Exemption Request seeks tax-exempt status under state law, that status is based on the antecedent IRS determination of federal tax exemption, not on any discretion to be exercised by the Franchise Tax Board. (See Rev. & Tax. Code, § 23701, subd. (b)(1)(A) [organization "shall be exempt from taxes" upon submission of IRS determination letter or ruling

11

recognizing exemption from federal income tax under 26 U.S.C. § 501(a)].) These documents accordingly do not qualify for protection under section 425.16, subdivision (e)(1) and (2), because they are not writings made before or in connection with an official proceeding. (See *City of Industry*, *supra*, 198 Cal.App.4th at p. 217.)

### 2. *Writings Made in a Public Forum in Connection With an Issue of Public Interest*

Alternatively, Jin and Yaning Li assert the documents concern an issue of public interest or in furtherance of the exercise of the constitutional right of petition in connection with an issue of public interest under section 425.16, subdivision (e)(3) and (4).[5] Under their theory, the Association's exempt purpose under Internal Revenue Code section 501(c)(3) and the federal statute's requirement that the Association's earnings not inure to the benefit of any private shareholder or individual necessarily render the Association's incorporation documents and exemption from state tax a matter of public interest.

Under "the 'synecdoche theory of public issue in the anti-SLAPP statute[]' . . . [citation][,] [a]lmost any statement, no matter how specific, can be construed to relate to some broader topic. But, '[t]he part is not synonymous with the greater whole.' [Citation]" (*Dual Diagnosis Treatment Center, Inc. v. Buschel* (2016) 6 Cal.App.5th 1098, 1106.) The definition of " 'public interest' " for purposes of the anti-SLAPP statute may include " 'private conduct that impacts a *broad segment of society* and/or that affects a community in a manner similar to that of a governmental entity.' " (*Id.* at p. 1104, italics added.) In making a "public interest" determination, however, it is critical to identify the specific speech that is the subject of the claims in the lawsuit. (*Ibid*.) There must exist " 'some degree of closeness' between the challenged statements and the asserted public interest." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133,

---

[5] The parties and the trial court agree that the state documents, available online, are writings made in a public forum.

150.)  " '[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.' " (*Ibid*., quoting *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898.)

Moreover, "where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119.)  No such controversy, dispute or discussion was ongoing at the time Jin filed the documents with the Secretary of State and Franchise Tax Board. Rather, it is the absence of such discussion and the alleged secrecy with which Jin filed the documents that informs Fuzu Li's allegations.

At issue here is merely the inclusion of identifying information, which Fuzu Li alleges should not have been used, and not the propriety of the Association's incorporation generally, or its exempt status.  There is no evidence that these disputed statements are of any interest to anyone else (even other members of the Association), except to the extent the statements are fodder for the private grudge between Jin and Fuzu Li.  It is not otherwise apparent how any of the information in the applications, including the contact information, is relevant to the public discourse or would encourage participation in a discussion regarding tax-exemption for the Association.  Although the members of the Association may take interest in the Association's corporate or tax-exempt status for the Association, it is not apparent that even they would have any interest in the specific subset of information in the documents on which Fuzu Li bases certain of his claims.

In sum, Jigang Jin and Yaning Li have not demonstrated that the information in the subject documents is protected under section 425.16, subd. (e)(3) and (4).

13

## C. *Second Step of the Anti-SLAPP Analysis*

Because the trial court determined that the allegations of the first amended cross-complaint did not arise from protected activity, it did not examine whether Fuzu Li met his burden of establishing that his claims had "minimal merit" as required under the second step of the anti-SLAPP analysis. We therefore remand for the trial court to conduct that analysis. (See *Collier v. Harris* (2015) 240 Cal.App.4th 41, 57.)

Each party has argued that we may resolve this second step in favor of their respective positions, given the de novo standard of review. In our role as a reviewing court, we are reluctant to reach a question that the trial court has not first considered. The burden on remand accordingly shifts to Fuzu Li "to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

Because we remand for the trial court's consideration of the second-step analysis, Jin and Yaning Li's claim for attorney fees as prevailing defendants under section 425.16, subdivision (c) is premature.

### III.    DISPOSITION

The trial court's order denying Jigang Jin's and Yaning Li's special motions to strike cross-complainant Fuzu Li's first amended cross-complaint under Code of Civil Procedure section 425.16 is reversed. On remand, the trial court is directed to proceed to the second step of the anti-SLAPP analysis and, if Jin and Yaning Li are thereafter the prevailing parties, to their request for attorney fees under Code of Civil Procedure section 425.16, subdivision (c). Jin and Yaning Li shall recover their costs on appeal.

14

_____

LIE, J.



WE CONCUR:




_____

GREENWOOD, P.J.




_____

GROVER, J.




*Lin v. Jin et al.*
H048817

Filed 9/16/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

FUZU LI,

    Cross-complainant and Respondent,

v.

JIGANG JIN et al.,

    Cross-defendants and Appellants.

H048817
(Santa Clara County
Super. Ct. No. 19CV344983)

BY THE COURT:

The opinion in the above-entitled matter filed on August 19, 2022, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports. Under California Rules of Court, rule 8.1105(c), the opinion is ordered published.

_____

LIE, J.


_____

GREENWOOD, P.J.


_____

GROVER, J.

*Li v. Jin et al.*
H048817

Trial Court:                                          Santa Clara County
                                                     Superior Court No.:  19CV344983


Trial Judge:                                         The Honorable Maureen A. Folan



Attorney for Cross-defendants and                   Murphy, Pearson, Bradley & Feeney
Appellants Jigang Jin and Yaning Li:                John P. Girarde

                                                    Koss Firm
                                                    Adam M. Koss

Attorneys for Cross-complainant and                 Law Offices of Russell J. Halon
Respondent:  Fuzu Li                                Russell J. Halon

*Li v. Jin et al.*
H048817