Filed 11/2524  Arevalo v. Pinnacle Farm Labor CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| NELSON AREVALO,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PINNACLE FARM LABOR, INC.,<br><br>    Defendant and Appellant. | 2d Civ. No. B328656<br>(Super. Ct. No. 56-2022-00563165-CU-OE-VTA)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on October 25, 2024, be modified as follows:

1. On page 8, the first sentence of the second full paragraph under "*II. Order Does Not Split Causes of Action*," the word "inquiry" is changed to "injury" so the sentence reads:

> California follows the primary rights theory that one injury gives rise to only one cause of action.

There is no change in the judgment.

<u>NOT TO BE PUBLISHED.</u>

_____

GILBERT, P.J.        YEGAN, J.        BALTODANO, J.

Filed 10/25/24  Arevalo v. Pinnacle Farm Labor CA2/6 (unmodified opinion)
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| NELSON AREVALO,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PINNACLE FARM LABOR, INC.,<br><br>    Defendant and Appellant. | 2d Civ. No. B328656<br>(Super. Ct. No. 56-2022-00563165-CU-OE-VTA)<br>(Ventura County) |

Here the absence of an arbitration agreement cannot be made to appear through the fiction of a third-party beneficiary contract.

A farm laborer was employed by a farm labor contractor at several properties.  Only one of the property owners had the laborer sign an arbitration agreement.  The agreement included the contractor as a third-party beneficiary.  The laborer filed a class action and an action under the Private Attorney General Act (PAGA) (Lab. Code, § 2698, et seq.) alleging labor law violations.

The contractor moved to compel arbitration contending that the arbitration agreement the laborer signed with one property owner covered all work performed for the contractor. The trial court granted the motion only for work performed on the property of the owner who obtained the arbitration agreement. The contractor appeals. We affirm.

FACTS

Pinnacle Farm Labor, Inc. (Pinnacle) is a farm labor contractor. Nelson Arevalo is a farm laborer who was employed by Pinnacle from May 2021 to December 2022. While employed by Pinnacle, Arevalo worked on a number of farms. He often worked for several of Pinnacle's clients in the same week. One such client was Wonderful Citrus Packing LLC (Wonderful).

The trial court found that Arevalo entered into an arbitration agreement with Wonderful[1] as follows:

"[Y]ou [Arevalo] understand that you will be providing services to [Wonderful] through [Pinnacle] and in connection therewith, and with connection to services you have or will render for [Wonderful] directly or through any other entity, you and [Wonderful] voluntarily agree that any dispute, or controversy relating to (i) the services you render for [Wonderful]; (ii) the nature of your service relationship with [Wonderful] and terms and conditions related thereto; or (iii) the termination thereof shall be submitted to final and binding arbitration in accordance with the terms of this Mutual Agreement to Arbitrate Disputes . . . .

---

[1] Arevalo denied that he entered into any such agreement but does not challenge the trial court's finding for purposes of this appeal.

2

"This agreement applies to all claims that [Wonderful] may have against you, as well as all claims that you may have against [Wonderful], including any of [Wonderful's] partners, affiliated companies, successors, contractors (including but not limited to your employer and any entity that provides you your paycheck), assigns, owners, directors, officers, shareholders, employees, managers, members, agents."

The agreement stated that all claims must be brought in the party's own capacity and not as a plaintiff member of a class. The agreement specifically excludes from arbitration small claims actions, workers compensation claims, unemployment benefit claims, administrative claims and charges, and PAGA representative actions. The agreement stated that it shall be governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1, et seq.) and the Code of Civil Procedure.

*Underlying Action*

Arevalo filed a class action and representative action complaint under PAGA, against Pinnacle, as the only named defendant, alleging twelve causes of action. Ten of the causes of action were for wage and hour violations, including: claims for unpaid wages; failure to provide rest, meal, and recovery periods; failure to pay wages timely; failure to maintain and provide employment records and accurate wage statements and failure to reimburse for business expenses. Arevalo's final two causes of action were for violations of Business and Professions Code section 17200-17210, unfair competition, and civil penalties under PAGA.

*Motion to Compel Arbitration*

Pinnacle responded to the complaint with a motion to compel arbitration. Pinnacle's motion relied on the arbitration agreement Arevalo allegedly signed with Wonderful.

*Ruling*

The trial court found that Arevalo entered into an arbitration agreement with Wonderful and Pinnacle is a third-party beneficiary of the agreement. The court concluded, however, that the agreement applied only to work performed for Wonderful, at its locations, and causes of action arising from work performed for Wonderful. Work performed at other locations are not subject to arbitration. The court based its ruling on its interpretation of the agreement and on the principle that the rights of a third-party beneficiary cannot exceed the rights of a party to the contract.

DISCUSSION

*I. Interpretation of Agreement*

Pinnacle contends that the trial court erroneously concluded a portion of Arevalo's causes of action are outside the scope of the arbitration agreement.

Because there is no extrinsic evidence relating to the interpretation of the agreement, our review is de novo. (*Merrick v. Writers Guild of America, West, Inc.* (1982) 130 Cal.App.3d 212, 217.)

Pinnacle argues that the agreement must be broadly construed in favor of arbitration. (Citing *AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 650.) But the United States Supreme Court abrogated that rule in *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411 [212 L.Ed.2d 753] (*Morgan*). In *Morgan*, the question was whether a showing

4

of prejudice is necessary for a finding that a party has waived its right to arbitrate.  Some courts have held that a finding of prejudice is essential to waiver in the context of arbitration, but not in other contexts.  Those courts based the prejudice requirement on the FAA's policy favoring arbitration.  In rejecting that requirement, the court stated:

"But the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules.  [Citation.]  Our frequent use of that phrase connotes something different.  'Th[e] policy,' we have explained, 'is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'  [Citation.]  Or in another formulation:  The policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.'  [Citation.]  Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind.  But a court may not devise novel rules to favor arbitration over litigation.  [Citation.]  If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it.  The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." (*Morgan*, *supra*, 596 U.S. at p. 418.)

Although *Morgan* concerns procedural rules applied to arbitration agreements, its lesson applies equally to the interpretation of arbitration agreements.

There is nothing sacred about an arbitration agreement.  As in this case, they are often forced on a party with no bargaining power as a condition of employment.  As our Supreme

5

Court stated in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 115, "Various studies show that arbitration is advantageous to employers not only because it reduces the costs of litigation, but also because it reduces the size of the award that an employee is likely to get, particularly if the employer is a 'repeat player' in the arbitration system. [Citations.]  It is perhaps for this reason that it is almost invariably the employer who seeks to compel arbitration. [Citation.]."

Indeed, any arbitrator who wishes to remain in the arbitration business must be concerned with offending such a "repeat player."  In light of the advantage an arbitration agreement provides an employer over an employee who is forced to sign the agreement as a condition of employment, there is no reason to broadly construe the agreement in favor of arbitration. Instead, an arbitration agreement should be interpreted as any other contract.

The fundamental rule of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting.  (Civ. Code § 1636.)  The relevant intent is objective; that is, derived from the terms of the contract, not a party's subjective intent.  (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54-55.)  "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."  (Civ. Code § 1643.)

Here only Wonderful and Arevalo are signatories to the agreement.  Its obvious purpose is to protect Wonderful from lawsuits that may arise due to labor performed on its land.

Pinnacle does not suggest why Wonderful would intend to protect unrelated landowners from lawsuits that arise from labor performed on unrelated land. Nor is it reasonable to conclude that by signing an agreement with Wonderful, Arevalo intended to bind himself to arbitrate disputes that may arise on other landowners' land. The agreement provides, "[Y]ou [Arevalo] understand that you will be providing services to [Wonderful] . . .." Arevalo had every reason to believe that the agreement would be limited to services he provided to Wonderful.

Even if we were to broadly construe the agreement in favor of arbitration, as Pinnacle suggests, we would reach the same conclusion. Broad construction is limited in part by reasonableness. (Civ. Code § 1643.) It would be unreasonable to apply the agreement to services provided to anyone other than Wonderful.

Moreover, Pinnacle is a third-party beneficiary of the agreement. A third-party beneficiary to an agreement has no greater rights under the contract than the actual contracting parties. (*Mercury Casualty Co. v. Maloney* (2003) 113 Cal.App.4th 799, 803.) Pinnacle cites no authority giving Wonderful the right to compel arbitration for work done on properties in which it has no interest. (See *City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 208 [a person who has no interest in the subject matter of an action, and therefore no right to relief, cannot state a cause of action].)

Although the trial court clearly stated the third-party beneficiary rule as an alternative basis for its decision, Pinnacle failed to discuss the issue in its opening brief. Instead, it discusses the issue for the first time in its reply brief, denying Arevalo the right to respond. Pinnacle has waived argument on

the issue.  (See *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766 [court refused to consider issues in reply brief that could have been raised in the opening brief].)  Pinnacle's argument is not convincing.  The agreement granted Pinnacle no special rights.  It simply included Pinnacle in whatever rights Wonderful has.  Pinnacle's rights cannot exceed Wonderful's rights.

*II. Order Does Not Split Causes of Action*

Pinnacle contends that the trial court's order impermissibly splits causes of action between arbitration and court actions.

California follows the primary rights theory that one inquiry gives rise to only one cause of action.  (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904.)  The primary right is distinguished from the legal theory on which liability for the injury is premised on the remedy sought.  (*Ibid*.)  It follows that where there is a single injury, a plaintiff may not bring two lawsuits based on different legal theories or different remedies sought.  (*Ibid*.)  For example, a single breach of contract cannot support a lawsuit for specific performance and a subsequent separate lawsuit for damages.  (*Id*. at p. 905.)

Here Arevalo did not bring multiple lawsuits based on different remedies; he brought a single lawsuit.  That a portion of the lawsuit will be tried in a different forum does not violate the ban on splitting a cause of action.  The ban applies to multiple lawsuits, not different forums in the same lawsuit.

As our Supreme Court stated in *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1124-1125 (*Adolph*):

"When a case includes arbitrable and nonarbitrable issues, the issues may be adjudicated in different forums while remaining part of the same action.  Code of Civil Procedure section 1281.4 states that upon 'order[ing] arbitration of a

8

controversy which is an issue involved in an action,' the court should 'stay the action.' It further provides that '[i]f the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only.' Section 1281.4 does not contemplate that the compelled arbitration of an issue in controversy in the action is a separate action. The statute makes clear that the cause remains one action, parts of which may be stayed pending completion of the arbitration. [Citations.]

"Indeed, it is a regular and accepted feature of litigation governed by the FAA that the arbitration of some issues does not sever those issues from the remainder of the lawsuit. The high court has long recognized that the FAA '*requires* piecemeal resolution [of related disputes in different forums] when necessary to give effect to an arbitration agreement.' [Citation.] . . . When an action includes arbitrable and nonarbitrable components, the resulting bifurcated proceedings are not severed from one another; rather, the court may 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.' [Citation.]." (*Adolph*, *supra*, 14 Cal.5th at pp. 1124-1125.)

Pinnacle attempts to distinguish *Adolph* on the ground that the case concerned standing. But our Supreme Court's discussion on what constitutes a single cause of action applies equally to whether the trial court's referral of only a part of the case to arbitration constitutes splitting a cause of action. In fact, in its discussion, our Supreme Court cited *Cuevas v. Truline Corp.* (2004) 118 Cal.App.4th 56, 61 (*Cuevas*) with approval. (*Adolph*, *supra*, 14 Cal.5th at p. 1125.) In *Cuevas*, the appellate court held that plaintiffs did not split a cause of action by filing a single complaint and arbitrating against some but not all defendants.

9

*III. No Violation of Principles of Arbitration*

Pinnacle contends that the trial court's ruling violates other basic principles of arbitration and creates unmanageable confusion and uncertainty.

Pinnacle argues that the trial court's order violates the principle that the objective of arbitration is to provide an efficient forum for the resolution of disputes (Citing *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384.) But both the United States and the California Supreme Courts have recognized that bifurcation can create inefficiencies, but nevertheless approved it. (*Adolph, supra,* 14 Cal.5th at p. 1125.)

Pinnacle also argues that the bifurcated proceedings can create problems with res judicata. But the proceedings constitute a single cause of action. (*Adolph, supra,* 14 Cal.5th at pp. 1124-1125.) Res judicata is not implicated.

Finally, Pinnacle imagines several problems that could arise in a bifurcated proceeding. It claims the imagined problems are sufficient to deprive Arevalo of his constitutional right to a jury trial on nonarbitrable issues. Pinnacle refrains from explaining why the same imaginary problems are not sufficient to deprive it of its non-constitutional right to arbitrate issues. Suffice it to say that Pinnacle cites no authority for depriving Arevalo of his constitutional right to a jury trial on nonarbitrable issues.

10

DISPOSITION

The judgment (order) is affirmed.  Costs are awarded to respondent.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:



YEGAN, J.



BALTODANO, J.



11

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

LightGabler, Brian R. Weilbacher; Ferguson Case Orr Paterson and John A. Hribar for Defendant and Appellant.

Melmed Law Group, Jonathan Melmed, Laura M. Supanich and Michiko Vartanian for Plaintiff and Respondent.